IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TORY BRIDGEFORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 7150 |
| v. | ) | |
| | ) | Judge Jorge Alonso |
| CITY OF GLENWOOD, Detective | ) | |
| MORACHE, Sergeant PERRY, and CITY | ) | |
| OF GLENWOOD POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tory Bridgeforth brings this civil rights action pursuant to 42 U.S.C. § 1983 against the Village of Glenwood[1] and certain of its police officers, asserting claims of malicious prosecution and violations of his constitutional rights under the Fourth and Fourteenth Amendments. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied as to plaintiff's Fourth Amendment claims against the individual officers Morache and Perry, but it is otherwise granted.

## BACKGROUND

On April 5, 2017, plaintiff was exiting his vehicle near his home in Glenwood, Illinois, when he noticed another vehicle traveling toward him at a high rate of speed, coming so near that plaintiff believed the driver of the vehicle was attempting to strike him. The vehicle passed plaintiff, but rather than continuing down the street, it turned around and began traveling back

---

[1] Although plaintiff refers to the "City" of Glenwood in the caption and throughout the operative Second Amended Complaint (ECF No. 65), defendants point out that Glenwood is incorporated as a village. *See* https://www.villageofglenwood.com; https://www.ilsos.gov/isa/localgovnameindexsrch.jsp; *compare* 65 ILCS 5/2-2-5 *with* 65 ILCS 5/2-3-5, 2-3-5a. The error makes no difference for purposes of this case.

toward plaintiff again. At that point, plaintiff, who was then employed as a police officer of the Village of Dixmoor and South Suburban College, drew his service pistol and fired in the vicinity of the vehicle. The vehicle left the scene.

Plaintiff called the Glenwood police department to report the incident, and several officers were dispatched to his home. The officers, led by defendants Detective Morache and Sergeant Perry, began investigating the incident, including by retrieving shell casings, obtaining surveillance video, and taking statements from plaintiff and other individuals they encountered at the scene. According to plaintiff, the other individuals told the officers that it appeared that the person in the vehicle was attempting to run plaintiff down. Further, plaintiff alleges that Detective Morache and Sergeant Perry learned "within hours" that the vehicle had been stolen. (2d Am. Compl. ¶ 9, ECF No. 65.) Additionally, in his response brief, plaintiff states that he personally "advised the Defendants of the identity of the individual who was driving the vehicle that nearly struck him and that said individual had recently made threats upon his life." (Pl.'s Resp. Br. at 4, ECF No. 77.)

The Chief of Police at the Dixmoor Police Department told plaintiff that, based upon a conversation he had had with his counterpart in Glenwood, plaintiff would not face any charges for discharging his weapon, as the Glenwood police had found no evidence of any wrongdoing by plaintiff. But after several days passed, although no new information had come to light, Detective Morache and Sergeant Perry spoke with prosecutors about bringing formal charges against plaintiff. Plaintiff was arrested by Morache and Perry and charged with aggravated discharge of a firearm, a felony. Plaintiff alleges that Morache and Perry did not reveal that the vehicle involved in the April 5 incident had been stolen or that the person believed to have stolen it had made threats against plaintiff's life. Further, plaintiff alleges that he had been acquainted with Perry and had

2

generally had a cordial relationship with him, but, in the months leading up to the April 2017 incident, the relationship began to deteriorate as a result of Perry's interactions with plaintiff's "female acquaintance." (2d Am. Compl. ¶ 5.)

On June 14, 2018, pursuant to an agreement between plaintiff and the prosecutors, plaintiff pleaded guilty to an amended charge of misdemeanor disorderly conduct, and he was sentenced to six months' conditional discharge, which he completed satisfactorily. (*See* Defs.' Mot. to Dismiss Exs. 1-3, ECF Nos. 66-1, 66-2, 66-3.)[2] Plaintiff subsequently filed this suit. In the operative Second Amended Complaint, plaintiff's claims fall into three categories: (1) § 1983 claims of unlawful seizure under the Fourth Amendment against Morache, Perry, and the Village of Glenwood, arising out of plaintiff's arrest and detention (*see* Counts I, III, and V); (2) claims of malicious prosecution, apparently pursuant to Illinois law, against the same three defendants (*see* Counts II, IV, and VI); and (3) a claim labeled as "fraud/fraudulent concealment," but which plaintiff clarifies in his response brief is a § 1983 claim for suppression of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), in violation of plaintiff's due process rights under the Fourteenth Amendment, against defendants Morache and Perry (*see* Count VII).

## ANALYSIS

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement

---

[2] Review of a motion to dismiss usually involves consideration of only the complaint. See Fed. R. Civ. P. 12(d) (a motion to dismiss that includes matters not in the complaint should be converted into one for summary judgment). But courts may take judicial notice of matters of public record, such as pleadings and transcripts from a proceeding in another court. *See Santana v. Cook Cty. Bd. of Rev.*, 679 F.3d 614, 619-20 (7th Cir. 2012); *Ray v. City of Chi.*, 629 F.3d 660, 665 (7th Cir. 2011); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Section 1983 creates a 'species of tort liability,'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" *Manuel*, 137 S. Ct. at 917 (quoting U.S. Const. amend. IV). "'A person is seized' whenever officials "restrain[ ] his freedom of movement' such that he is 'not free to leave.'" *Manuel*, 137 S. Ct. at 917 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)).

4

"'[T]he general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime.'" *Manuel*, 137 S. Ct. at 917 (quoting *Bailey v. United States*, 568 U.S. 186, 192 (2013)). "An officer has probable cause to arrest if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) (internal quotation marks omitted). The Fourth Amendment protects not only against "an initial arrest without probable cause," but also any "continued detention in its absence." *See Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (citing *Manuel*, 137 S. Ct. at 918-19), *overruled on other grounds by Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019).

Under Illinois law, "to state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010).

## I.    UNREASONABLE SEIZURE

Defendants contend that plaintiff fails to state a claim for an unlawful seizure under the Fourth Amendment because his own allegations show that there was probable cause for his arrest. Plaintiff admits discharging his service pistol "in [the] vicinity" of a vehicle that he says was bearing down on him, alleging that he did so because he "fear[ed] for his safety and the safety of others on the scene." (*See* 2d Am. Compl. ¶ 7.) Plaintiff's theory is apparently that he was justified in discharging the firearm because he acted in self-defense. Defendants argue that, even if it were

true that plaintiff was acting in self-defense, that fact by itself would not negate probable cause because Morache and Perry knew that plaintiff had discharged his service pistol in the vicinity of the vehicle, and they were not required to believe plaintiff's version of how the incident transpired. Rather, defendants argue, so long as they were aware of facts sufficient to support a reasonable belief that plaintiff had committed a crime, even if they were also aware of some conflicting evidence pointing in the opposite direction, the law permitted them to make an "arrest and let prosecutors and courts determine who [was] telling the truth." *Askew v. City of Chi.*, 440 F.3d 894, 895 (7th Cir. 2006).

Defendants are correct that an officer need not assume that everything a suspect tells him is true; if a reasonable officer would believe in the truth of certain inculpatory evidence even though it contradicts a suspect's exculpatory account, then an officer aware of such evidence may arrest the suspect without offending the Fourth Amendment. *See Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013); *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006) ("[P]olice may act on the basis of inculpatory evidence without trying to tote up and weigh all exculpatory evidence."); *see also Pennsylvania v. Dunlap*, 129 S. Ct. 448, 449 (2008) (Roberts, J., dissenting from denial of certiorari) ("In any event, an officer is not required to eliminate all innocent explanations for a suspicious set of facts to have probable cause.")

But it does not follow that police officers are "under no obligation to take [a suspect's] right to self[-]defense into account" before deciding whether to make an arrest. *See Mahaffey v. Misner*, No. 07 C 6758, 2009 WL 2392087, at *5-6 (N.D. Ill. July 31, 2009) (denying defendants' motion for summary judgment on plaintiff's malicious prosecution claim because there was a factual dispute over whether a reasonable officer would have perceived the plaintiff to have been acting in self-defense); *see also Jones v. Pettit*, No. 10-3131, 2013 WL 1947364, at *9 (C.D. Ill.

May 9, 2013) (similarly denying summary judgment for defendants, citing *Mahaffey*); *cf. Driebel v. City of Milwaukee*, 298 F.3d 622, 645 (7th Cir. 2002) ("[B]ased on the facts known to [the officer] at the time of the arrest, supported with the statements of several witnesses *ruling out the possibility of self-defense*, we believe there was sufficient evidence to establish probable cause.") (emphasis added).

The critical question is whether the totality of the facts and circumstances known to Morache and Perry at the time of plaintiff's arrest would have led reasonably prudent officers in their position to believe that plaintiff had probably committed a crime. The Court cannot answer that question at the pleading stage, when the full facts and circumstances are unknown. At the pleading stage, plaintiff need only allege sufficient facts—assumed true—to plausibly permit a reasonable factfinder to conclude that Morache and Perry lacked reasonable grounds to believe plaintiff had committed a crime. Plaintiff alleges that he told Morache and Perry that he discharged his firearm because the person driving the vehicle—a person who had previously threatened plaintiff's life—was trying to run him down, and other individuals who Morache and Perry interviewed at the scene corroborated plaintiff's account of the incident. Morache and Perry may well have had good reason to believe that plaintiff's use of force was not justified under the circumstances, but the complaint does not reveal it. Based only on the facts alleged in the complaint, a reasonable factfinder could plausibly conclude that Morache and Perry unreasonably ignored overwhelming evidence that plaintiff acted in self-defense. Thus, plaintiff has met his pleading burden by stating a plausible claim against Morache and Perry, and the motion to dismiss is denied as to the Fourth Amendment claims in Counts I and III against Morache and Perry.

Due to a recent change in the law, the Court *sua sponte* raises a related issue. Generally, under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), after a person has been convicted of

committing a crime, he cannot assert a § 1983 claim arising out of the same incident if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . unless the plaintiff can demonstrate that the conviction . . . has already been invalidated." That is, in much the same way as a common-law malicious-prosecution plaintiff must be able to prove that "the criminal proceedings have terminated in the plaintiff's favor," a § 1983 plaintiff must be able to prove that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or *called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254." *Id.* at 486-87, 489 (emphasis added). In *Savory v. Cannon*, 947 F.3d 409, 430-31 (7th Cir. 2020) (*en banc*), a decision rendered while the parties were in the midst of briefing the present motion to dismiss, the Seventh Circuit ruled that *Heck*'s "favorable-termination requirement," *see McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019), applies even to § 1983 plaintiffs who have already been released from custody or to whom habeas corpus relief is unavailable for any other reason.

Prior to *Savory*, Seventh Circuit case law had suggested that "in all cases where habeas relief is unavailable, then section 1983 must provide an avenue of relief." 947 F.3d at 423. Indeed, in *DeWalt v. Carter* 224 F.3d 607, 617 (7th Cir. 2000), *abrogated by Savory*, 947 F.3d at 423, the Seventh Circuit not only reasoned that a plaintiff to whom "federal habeas relief [was] not available" must therefore "be able to proceed on his § 1983 action" notwithstanding *Heck*, but it overruled a contrary case, *Anderson v. Cty. of Montgomery*, 111 F.3d 494, 499 (7th Cir. 1997). *Anderson* had held that *Heck*'s favorable-termination requirement applied to a § 1983 plaintiff who had been sentenced to conditional discharge and had had scant opportunity, if any, to file a habeas petition, reasoning that "[t]he fact that a plaintiff is no longer incarcerated has no bearing on the applicability of *Heck*." *Id.* In *Savory*, the *en banc* Seventh Circuit explained that there had actually

been "no need to overrule *Anderson*," which was "perfectly consistent with *Heck* and with" *Savory*.

Thus, when defendants filed their motion to dismiss, it may have seemed that, under *DeWalt* and like cases, *Heck* does not apply here because plaintiff was not in custody when he filed this case and he had had no realistic opportunity to challenge his conviction[3] in a habeas petition. But after *Savory* and its rehabilitation of *Anderson*, it is clear that *Heck* does apply here, and plaintiff may not proceed with his § 1983 claims if a judgment in his favor would necessarily imply the invalidity of his conviction. Further, it is appropriate for the Court to raise this issue *sua sponte*. *See Parker-Bey v. Taylor*, No. CIV. 11-132-GPM, 2011 WL 837783, at *2 (S.D. Ill. Mar. 5, 2011) ("[A] district court is authorized to dismiss a *Heck*-barred case sua sponte.") (citing cases). Thus, the Court considers whether, in the circumstances of this case, plaintiff's Fourth Amendment claims necessarily imply the invalidity of his conviction for disorderly conduct.

"Many claims that concern how police conduct searches or arrests are compatible with a conviction." *Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017) (quoting *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010)). Often, "[w]hether the arresting officer had probable cause to arrest the plaintiff ha[s] no bearing on the validity of the guilty plea and conviction." *Rollins v. Willett*, 770 F.3d 575, 576-77 (7th Cir. 2014); *see also Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir.

---

[3] Conditional discharge is akin to probation, but without the monitoring of a probation officer. 730 ILCS 5/5–1–4 ("'Conditional discharge' means a sentence or disposition of conditional and revocable release without probationary supervision but under such conditions as may be imposed by the court."); *see United States v. Caputo*, 978 F.2d 972, 977 (7th Cir. 1992) ("Conditional discharge is . . . probation without the probation officer."). Although conditional discharge is a light sentence for someone who had been originally charged with a felony, it is not an acquittal or a *nolle prosequi*; it is a sentence following conviction of a crime. *See Wakefield v. Dep't of State Police*, 994 N.E.2d 722, 725 (Ill. App. Ct. 2013) ("Again, Wakefield was not acquitted, nor did he receive supervision . . . ; he received a conditional discharge upon being convicted of domestic battery. . . . This meant that, while being spared from going to prison, even after completion of his sentence, the conviction still remained on his record."). Therefore, the *Heck* doctrine comes into play. *See Anderson*, 111 F.3d at 499.

2008). However, a § 1983 plaintiff "may plead himself into a *Heck* bar by insisting on facts inconsistent with his guilt." *Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009) (citing *McCann v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006) ("The question for us, then, is not whether McCann *could have* drafted a complaint that steers clear of *Heck* (he could have), but whether he did. In other words, does the complaint contain factual allegations that necessarily imply the invalidity of his convictions.")); *see Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013) (a § 1983 claim is *Heck*-barred where a plaintiff "insists that the arrest and prosecutions were wrongful because he never" committed the offense); *see also Rollins,* 770 F.3d at 576 ("So suppose a defendant convicted of possessing illegal drugs found on his person sued the officer who had found the drugs, alleging that the officer planted them. If he won the suit, it would imply the invalidity of his drug conviction."); *Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir. 2003) (explaining that the plaintiff's claim was *Heck*-barred because he "adhered steadfastly to his position that there were no drugs, that he was framed," which was "inconsistent" with the validity of the conviction).

Plaintiff comes close to alleging facts that necessarily imply the invalidity of his conviction, strongly suggesting that he acted reasonably in self-defense, rather than discharging his weapon in an "unreasonable manner," as he was convicted of doing. (*See* Defs.' Mot. Ex. 3, ECF No. 66-3 at 4.) But plaintiff does not directly allege that he actually acted in self-defense, nor must he prove that he did so in order to prevail on his Fourth Amendment claims. Regarding those claims, the outcome of this suit depends on what the arresting officers knew at the time of the arrest, which has "no bearing on the validity of the guilty plea and conviction." *Rollins*, 770 F.3d at 576-77. It could be, depending on what the evidence shows about the specific facts and circumstances, that Morache and Perry ignored overwhelming evidence that plaintiff acted in self-defense and lacked evidence reasonably supporting a contrary conclusion under the circumstances

when they arrested him—but that, nevertheless, the contrary conclusion was the correct one. Therefore, plaintiff's Fourth Amendment claims are not *Heck*-barred, although the Court warns him that he will not be heard to argue that he actually acted in self-defense; he may only argue that the facts Morache and Perry were aware of at the time of his arrest did not reasonably support a contrary conclusion.[4]

That leaves the Fourth Amendment claim against the Village of Glenwood. In Count V, plaintiff alleges that Morache and Perry falsely arrested and unlawfully detained plaintiff, and the Village, "by and through its defendant Officers, engaged in conduct whereby members of the general public and those not serving in the Glenwood Police Department were harassed, bullied, and arrested without probable cause when in each instance a crime had not been committed" and "infringed upon the constitutional rights of plaintiff." (2d Am. Compl. ¶¶ 36-38.) Plaintiff does not clearly allege what the theory underlying this claim is, nor does his response brief shed any light on it.

It might seem that in Count V plaintiff is seeking to hold the Village liable for Morache and Perry's misconduct under a *respondeat superior* theory, but "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The only alternative, then, is that plaintiff is seeking to hold the Village liable under *Monell* for "violat[ing] constitutional rights via an official policy or custom." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an express policy of the [village], (2) a widespread practice that is so permanent

---

[4] Defendants also argue that plaintiff is collaterally estopped to assert claims that contradict his guilty plea, but the Court need not consider the doctrine of collateral estoppel separately, as the *Heck* doctrine accomplishes the same thing.

and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" *Id.* (quoting *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001)).

Plaintiff does not mention any final policymaker or express policy, and to assert a *Monell* claim based on a widespread practice, plaintiff must plausibly allege, by way of at least "some specific facts," rather than purely conclusory allegations that merely recite the elements of the cause of action, *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Brooks*, 578 F.3d at 581), that there were more than a handful of "isolated incidents" of unconstitutional misconduct to demonstrate that the Village had a genuinely widespread practice. *See Copeland v. Johnson*, No. 18-CV-3780, 2019 WL 4694786, at *6 (N.D. Ill. Sept. 26, 2019) (citing *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) and *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently [unconstitutional] conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three.") (internal quotation marks and citations omitted) (citing *Gable*, 296 F.3d at 538). Plaintiff does not make any specific, non-conclusory factual allegations to support an inference of a widespread practice other than to allege that he, himself, suffered a constitutional deprivation. That is the sort of conclusory allegation of an isolated incident—a potentially "random event," *Thomas*, 604 F.3d at 303—that falls short of stating a *Monell* custom-and-practice claim under the *Twombly/Iqbal* standard. *See Copeland*, 2019 WL 4694786, at *6. Rather than "plausibly suggesting . . . an entitlement to relief," plaintiff's allegations are "merely consistent with" it. *See McCauley*, 671 F.3d at 616 (citing *Twombly*, 550 U.S. at 557). Plaintiff does not

state a claim against the Village of Glenwood arising out of his arrest and detention, so Count V is dismissed.

## II.    MALICIOUS PROSECUTION

Defendants argue that, even if there was no probable cause for plaintiff's arrest, his state-law malicious prosecution claims must fail because the criminal proceedings instituted by Morache and Perry were not terminated in his favor.

Plaintiff must establish each element of his malicious prosecution claim in order to prevail. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("All of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution."). The second element—termination of the prosecution in favor of the plaintiff—requires plaintiff to show that the "the underlying criminal proceedings . . . were terminated in a manner . . . indicative of the innocence of the accused." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Criminal proceedings have not been terminated in a manner indicative of the innocence of the accused if they are abandoned as a "result of an agreement or compromise with the accused." *See id.* at 513 (citing Restatement (2d) of Torts §§ 660, 661 (1977)).

In this case, plaintiff pleaded guilty to a reduced, misdemeanor charge in exchange for a sentence of conditional discharge. Because plaintiff received this light sentence as part of a plea agreement, which required him to plead guilty to a lesser offense, it represents an "abandonment of the original charges result[ing] from an agreement or compromise," which does not fulfill malicious prosecution's favorable termination element. *Lewis v. Mills*, No. 09-CV-2090, 2009 WL 3669745, at *9 (C.D. Ill. Nov. 3, 2009) (citing *Swick*, 662 N.E.2d at 1242); *see Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) ("A prosecutor's dismissal of a criminal charge *may* imply innocence, but *Swick* added that it does not do so when it is part of a plea

13

bargain."); *see also McGregor v. City of Chicago*, No. 16-CV-4956, 2019 WL 1200778, at *3 (N.D. Ill. Mar. 14, 2019) ("When a defendant pleads guilty to one (or more) charges in exchange for having others dropped via *nolle prosequi*, the *nolle prosequi* does not indicate the defendant's innocence [and he] cannot prevail on a claim for malicious prosecution as to those claims."). Further, if plaintiff were to argue that the charges would eventually have been dropped irrespective of his guilty plea because they were unfounded, it would make no difference because Illinois law does not permit courts to "look past the form of a plea bargain to inquire what would have happened had a compromise not been reached." *Bridewell*, 730 F.3d at 677; *see McGregor*, 2019 WL 1200778, at *3 (citing *Bridewell*), *Jackson v. City of Chi.*, No. 14 C 6746, 2017 WL 8199322, at *4 (N.D. Ill. Dec. 12, 2017) (same).

For these reasons, plaintiff fails to state a claim of malicious prosecution. Counts II, IV, and VI are dismissed.

## III. CONCEALING EXCLUPATORY INFORMATION

In Count VII, plaintiff alleges that Morache and Perry had a duty to disclose to prosecutors and others involved in his criminal case that (1) the car that nearly hit plaintiff had been stolen and (2) the person driving it had previously made threats against plaintiff's life. Defendants argue that the Court must dismiss plaintiff's *Brady* claim (labeled as "fraud/fraudulent concealment" in Count VII of the complaint) because, even assuming this information was material, plaintiff admitted in his response brief that this information was not unknown to plaintiff.

The Court agrees with defendants. *Brady* "deals with the concealment of exculpatory evidence unknown to [a criminal] defendant"; the failure to disclose information of which the criminal defendant was aware is not a *Brady* violation. *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005). "Nor can *Brady* serve as the basis of a cause of action against the officers for failing to disclose these circumstances to the prosecutor" because "*Brady* rights run to the criminal

14

defendant, not the prosecution." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006).

In this case, not only was the information in question known to plaintiff, but he states in his response brief that he was the very person to give it to Morache and Perry. Of course plaintiff "knew what he had said at the interrogation," so he cannot claim that Morache and Perry violated his Fourteenth Amendment due process rights by failing to disclose these facts. *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), *overruled on other grounds by Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006); *see Sornberger*, 434 F.3d at 1029; *see also Conley v. City & Cty. of San Francisco*, No. 12-CV-00454-JCS, 2013 WL 5379376, at *21 (N.D. Cal. Sept. 24, 2013) (explaining that "evidence that is not suppressed does not qualify as *Brady* material," citing *Gauger*, *Sornberger*, and *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008)).

Because plaintiff already knew that the car had been stolen and the driver had threatened him, he cannot assert a *Brady* claim against Morache and Perry arising out of their failure to disclose these facts. The motion to dismiss is granted as to plaintiff's *Brady* claim in Count VII.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [66] is granted in part and denied in part. The motion is granted as to the claims in Counts II, IV, V, VI, and VII for malicious prosecution, concealment of exculpatory information, and Fourth Amendment violations against the Village of Glenwood. The motion is denied as to the Fourth Amendment claims against Morache and Perry in Counts I and III.

15

SO ORDERED.                                            ENTERED:  April 21, 2020

 

_____
**JORGE L. ALONSO**
**United States District Judge**